## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

KEANNA GOCHET, Individually and on Behalf of All Others Similarly Situated, )
)
Plaintiff, )
)
vs. )
)
DE VILLE ASSET MANAGEMENT LIMITED PARTNERSHIP and UNISA INC., )
)
Defendants. )

Case No.: 18-cv-257

**AMENDED CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Keanna Gochet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant De Ville Asset Management Limited Partnership ("DeVille") is a foreign limited partnership with its principal place of business located at 1132 Glade Road, Colleyville, Texas 76034.

7. DeVille is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others and incurred for personal, family, or household purposes. DeVille also purchases and owns defaulted consumer debts, and collects those debts on its own behalf.

8. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

9. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 189994, at *24-30 (M.D. Pa. Nov. 16, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697, at *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV*

*Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

10.     The primary purpose of DeVille's business, and DeVille's principal purpose, is the collection of consumer debts.

11.     DeVille's website states:

> DeVille generates revenues primarily through the purchase, collection and sale of performing and non-performing consumer receivables that have typically been delinquent 90 days by the credit grantors or not considered to be prime receivables. These receivables include MasterCard, Visa and other credit card accounts issued by banks.

http://devilleltd.com/ (accessed February 16, 2018).

12.     In addition to telephone and mail-based debt collection activities, DeVille has used the Wisconsin courts in its debt collection activities. A general search on Wisconsin Circuit Court Access ("CCAP") for DeVille returns 2 actions filed. Upon information and belief, both of those cases are collection actions against Wisconsin consumers.

13.     DeVille is also engaged in the business of a collection agency under Wisconsin law, in that it purchases and receives assignment of consumer debts that are in default at the time DeVille acquires them.

14.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

3

15.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

16.     DeVille is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former student loan accounts.   Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

17.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

18.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/ (accessed February 16, 2018).

19.     DeVille uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

20.     DeVille is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

4

21.     Defendant UNISA, Inc. ("UNISA") is a foreign corporation with its principal offices located at 7400 East Arapahoe Road Suite 10, Englewood, Colorado 80112.    Its registered agent for service of process is Raymond A. Morabito, 10894 Capstone Court, Highlands Ranch, Colorado 80126.

22.     UNISA is engaged in the business of a collection agency and loan servicer, using the mails and telephone to collect consumer debts owed to others.

23.     UNISA is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

24.     UNISA is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

25.     A company meeting the definition of a "debt collector" (here, DeVille) is vicariously liable for the actions of a second company collecting debts on its behalf (here, UNISA).  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on the behalf); *citing Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-06 (3d Cir. 2000).

## FACTS

### DeVille's January 16, 2018 Letters

26.     Sometime prior to January 16, 2018, Plaintiff obtained student loans to pay, in part, for tuition and other expenses at Spartan College of Aeronautics and Technology in Tulsa, Oklahoma.  Plaintiff's student loans were payable in installments and subject to the addition of interest.

27.     Plaintiff understood her student loans to be originated by the United States Department of Education.

5

28.     On or about January 16, 2018, DeVille mailed Plaintiff a debt collection letter, regarding an alleged debt, identifying a "Reference #" ending in 7544.  A copy of this letter is attached to this complaint as Exhibit A.

29.     The alleged debt referenced in Exhibit A was allegedly incurred for personal, family or household purposes, namely personal student loans, used only for personal, family or household purposes, including paying tuition.

30.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

31.     Upon information and belief, Exhibit A is a form debt collection letter used by DeVille to attempt to collect alleged debts.

32.     Exhibit A is the first written communication DeVille sent to Plaintiff regarding the alleged debt referenced in Exhibit A.

33.     Exhibit A includes the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

**Unless you notify this office within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Exhibit A.

34.     Exhibit A contains the following:

| | |
|---|---|
| **Reference #:** | ▊7544 |
| Re: | Spartan - Tulsa |
| Original Account #: | ▊0134 |
| Principal Balance: | $2,902.10 |
| Interest: | $21.94 |
| Total Balance: | $2,924.04 |

6

Exhibit A.

35.     On or about January 16, 2018, DeVille mailed Plaintiff another debt collection letter, regarding another alleged debt, identifying a "Reference #" ending in 7620.  A copy of this letter is attached to this complaint as Exhibit B.

36.     The alleged debt referenced in Exhibit B was allegedly incurred for personal, family or household purposes, namely personal student loans, used only for personal, family or household purposes, including paying tuition.

37.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

38.     Upon information and belief, Exhibit B is a form debt collection letter used by DeVille to attempt to collect alleged debts.

39.     Exhibit B is the first written communication DeVille sent to Plaintiff regarding the alleged debt referenced in Exhibit B.

40.     Exhibit B includes the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

**Unless you notify this office within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Exhibit B.

41.     Exhibit B contains the following:

```
Reference #:          ▉7620
Re:                   Spartan - Tulsa
Original Account #:   ▉0134
Principal Balance:    $1,965.00
Interest:             $14.86
Total Balance:        $1,979.86
```

Exhibit B.

42.    Exhibits A and B are plainly misleading and confusing as to the name of the

creditor to whom the debt is owed.

43.    Exhibits A and B state the following:

Please be advised that your account has been assigned to DeVille Asset Management, LTD.

You have thirty (30) days to make arrangements for payment or further collection efforts will commence.

You are directed to address all future correspondence and/or payments concerning this account to:

**DeVille Asset Management, LTD**
**PO Box 1987**
**Colleyville, TX 76034-1987**

For you convenience, you may also make additional payments online at: **www.paydeville.com**

Sincerely,

DeVille Asset Management, LTD
(817) 251-7000
service@devilleltd.com

Exhibits A and B.

44.    Exhibits A and B state that they are being sent "Re: Spartan – Tulsa" and also

states that "your account has been assigned to DeVille Asset Management, LTD."

45.    Exhibits A and B say that the accounts have been "assigned" but do not state who

assigned those accounts, nor do Exhibits and B define the scope of "assignment." *See e.g.,*

*Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 520-21 (Ill. App. Ct. 1st Dist. 2013).

46.    The statement that the account has been "assigned" to DeVille without

unequivocally identifying the scope of "assignment" or the name of the current creditor is

confusing and misleading to the unsophisticated consumer.

8

47.     Words like "assign" and "transfer" are inherently unclear as to whether the account has been assigned or transferred for collection purposes or the ownership of the account has been "assigned" or "transferred." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. Apr. 7, 2016) ("the word 'transfer' could mean either conveyance of title or assignment for collection . . . ."); *see also Shah*, 993 N.E.2d at 520-21 (discussing the difference between "assignment for collection" and sale of the creditor's entire interest in the account to a third-party debt buyer).

48.     The unsophisticated consumer would be unable to determine whether DeVille actually purchased the account or had merely been assigned the account for collection.

49.     Upon information and belief, DeVille has purchased the account in its entirety as a third-party debt buyer.  DeVille is the current creditor.

50.     On the face of Exhibits A and B it is impossible to determine the name of the creditor of the debt in question and whether the debt has been sold or has been otherwise assigned from the original creditor.

51.     The unsophisticated consumer would be confused as to the character of the account, whether the debt has been sold to a third-party debt buyer, and if so, to whom.

52.     DeVille's misrepresentation is a material false statement about the character of the account.  *Janetos*, 825 F.3d 324-25; *Hepsen v. J.C. Christensen & Assocs.*, 2009 U.S. Dist. LEXIS 92717, at *14 (M.D. Fla. Sept. 22, 2009), *aff'd by Hepsen v. Resurgent Capital Servs., LP*, 383 Fed. Appx. 877 (11th Cir. 2010).

53.     Even a sophisticated consumer, who might understand that debts can be freely transferred, bought, and sold, would not be able to determine who actually holds the debt from reading Exhibits A and B.  *See Janetos*, 825 F.3d at 322 n.2.

9

54.     Exhibits A and B identify the creditor in a way that would confuse and mislead the unsophisticated consumer.

### *UNISA's February 13, 2018 Letter*

55.     On or about February 13, 2018, UNISA mailed a debt collection letter to Plaintiff regarding an alleged "CHARTER COLLEGE ACCOUNT," which was "TRANSFERRED TO UNISA, INC. FOR SERVICING," and which was "NOW OWNED BY DEVILLE ASSET MANAGEMENT LTD." A copy of this letter is attached to this complaint as Exhibit C.

56.     Upon information and belief, the debts referenced in Exhibit C are the same personal student loan debts referenced in Exhibits A and B.

57.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

58.     Upon information and belief, Exhibit C is a form debt collection letter used by UNISA to attempt to collect alleged debts.

59.     Upon information and belief, Exhibit C was the first debt collection letter UNISA mailed to Plaintiff regarding the alleged debt allegedly owed to DeVille.

60.     Exhibit C does not include the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector mail the consumer within five days of the initial communication.

61.     Instead, Exhibit C purports to be collecting a debt that is not in default, which has not been accelerated, and which UNISA expressly, though falsely, asserts is "CURRENT":

```
ACCT    PRINCIPAL    INTEREST    LATE CHRG    SERV CHRG    COLL CHRG    LITIG CHRG
 ID       DUE          DUE         DUE          DUE          DUE          DUE
  1      163.75        0.00        0.00         0.00         0.00         0.00
  2      241.84        0.00        0.00         0.00         0.00         0.00



****************************  MESSAGES  ****************************
ACCT 1  YOUR ACCOUNT IS CURRENT ... THANK YOU
     2  YOUR ACCOUNT IS CURRENT ... THANK YOU
```

Exhibit C.

62.    In fact, Plaintiff was not current on the student loan debts referenced in Exhibit C.

63.    Plaintiff's student loan debts referenced in Exhibit C were in default at the time UNISA first became involved with Plaintiff's debts. *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536 (7th Cir. 2003).

64.    Exhibit C also states the following:

```
DEBT AMOUNT          $2,902.10    LATE CHARGE DUE            $0.00
PRINCIPAL PAID                    SERVICE CHARGE DUE         $0.00
PRINCIPAL CANCELLED      $0.00    COLLECTION CHARGE DUE      $0.00
PRINCIPAL BALANCE    $2,902.10    LITIGATION CHARGE DUE      $0.00
INTEREST PAID                     PRINCIPAL DUE            $241.84
                                  INTEREST DUE               $0.00

LAST PAID AMOUNT                  LAST PAID DATE

ALWAYS WRITE YOUR ACCOUNT NUMBER ON ALL CHECKS AND CORRESPONDENCE
```

Exhibit C.

65.    Exhibit C states that, as of February 13, 2018, the "DEBT AMOUNT" for one account is $2,902.10, with a "PRINCIPAL BALANCE" of $2,902.10.

66.    Exhibit A states the following:

```
Reference #:          ███7544
Re:                   Spartan - Tulsa
Original Account #:   ███0134
Principal Balance:    $2,902.10
Interest:             $21.94
Total Balance:        $2,924.04
```

11

Exhibit A.

67. Exhibit A states that, as of January 16, 2018, the debt with a "Principal Balance" of $2,902.10 had accrued interest in the amount of $21.94, and had a "Total Balance" of $2,924.04.

68. Upon information and belief, Exhibits A and C attempt to collect the same debt, except Exhibit C --- mailed almost a month after Exhibit A --- does not attempt to collect interest.

69. The amount of the debt stated in Exhibits A and C is plainly contradictory, false, misleading, and confusing. The debt has accrued interest or it has not.

70. Additionally, Exhibit A states the "Total Balance" without stating that the account is current, and that an amount less than the "Total Balance" was due, but Exhibit C --- mailed almost a month after Exhibit A --- states that the amount due is an installment payment in an amount considerably less than either the "Total Balance" stated in Exhibit A or the "DEBT AMOUNT" stated in Exhibit C.

71. Exhibit C also states the following:

```
DEBT AMOUNT          $1,965.00    LATE CHARGE DUE            $0.00
PRINCIPAL PAID                    SERVICE CHARGE DUE         $0.00
PRINCIPAL CANCELLED      $0.00    COLLECTION CHARGE DUE      $0.00
PRINCIPAL BALANCE    $1,965.00    LITIGATION CHARGE DUE      $0.00
INTEREST PAID                    PRINCIPAL DUE            $163.75
                                 INTEREST DUE               $0.00

LAST PAID AMOUNT                 LAST PAID DATE

ALWAYS WRITE YOUR ACCOUNT NUMBER ON ALL CHECKS AND CORRESPONDENCE
```

Exhibit C.

72. Exhibit C states that, as of February 13, 2018, the "DEBT AMOUNT" for the second account is $1,965.00, with a "PRINCIPAL BALANCE" of $1,965.00.

12

73. <u>Exhibit B</u> states the following:

**Reference #:** ▮7620
**Re:** Spartan - Tulsa
**Original Account #:** ▮0134
**Principal Balance:** $1,965.00
**Interest:** $14.86
**Total Balance:** $1,979.86

<u>Exhibit B</u>.

74. <u>Exhibit B</u> states that, as of January 16, 2018, the debt with a "Principal Balance" of $1,965.00 had accrued interest in the amount of $14.86, and had a "Total Balance" of $1,979.86.

75. Upon information and belief, <u>Exhibits B and C</u> attempt to collect the same debt, except <u>Exhibit C</u> --- mailed almost a month after <u>Exhibit B</u> --- does not attempt to collect interest.

76. The amount of the debt stated in <u>Exhibits B and C</u> is plainly contradictory, false, misleading, and confusing. The debt has either accrued interest or it has not.

77. Additionally, <u>Exhibit B</u> states the "Total Balance" without stating that the account is current, and that an amount less than the "Total Balance" was due, but <u>Exhibit C</u> --- mailed almost a month after <u>Exhibit B</u> --- states that the amount due is an installment payment in an amount considerably less than either the "Total Balance" stated in <u>Exhibit B</u> or the "DEBT AMOUNT" stated in <u>Exhibit C</u>.

78. Upon information and belief, DeVille and UNISA work in a scripted process to intimidate consumers by providing confusing and conflicting information about the status of the account, including contradictory and inconsistent account balances, as well as false and confusing representations to consumers about whether their accounts have not been sold to third-party debt buyers.

13

79.     These contradictory and confusing misrepresentations are intended to deceive, mislead, confuse, and intimidate debtors into believing the debt has not been sold, which has important implications for settling the account because debt buyers often purchase accounts for pennies on the dollar. *See, e.g., Bartlett v. Portfolio Recovery Assocs., LLC*, 91 A.3d 1127, 1132 (Md. Ct. App. 2014) (A 'debt buyer' can buy these 'charged-off' debts from the original creditor at a low price, often mere pennies on the dollar, and often in bulk, and then go about collecting the account balance from the debtor.").

80.     Plaintiff was confused and misled by Exhibits A-C.

81.     The unsophisticated consumer would be confused and misled by Exhibits A-C.

82.     Plaintiff had to spend time and money investigating Exhibits A-C.

83.     Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-C.

### The FDCPA

84.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character,

14

amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

15

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

85.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

86.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

87.     15 U.S.C. § 1692e(2)(a) specifically prohibits debt collectors from making false representations about "the character, amount, or legal status of any debt."

88.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

16

89.     For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, Defendant's misrepresentation and confusion of the current creditor's identity is a material misstatement. *Janetos*, 825 F.3d at 317, 324-25 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor should write after '"pay to the order of" on the payment check to ensure the debt is satisfied.'" (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. Mar 1, 2013)).

90.     The unsophisticated consumer would not be able to determine who actually holds the debt from reading Exhibits A and B, which purport to collect a debt that has been "assigned" to DeVille but do not state whether the debt was assigned for collection or actually sold.

91.     The unsophisticated consumer receiving Exhibits A and B would be unsure whether DeVille or some other entity was the actual current creditor as of the date of each letter.

92.     The unsophisticated consumer receiving Exhibits A-C would not be able to determine the amount of the debt, whether it was current or in default, and whether the account was bearing interest.

93.     15 U.S.C. § 1692f generally prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt."

94.     15 U.S.C. § 1692g(a) states, in pertinent part:

> **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;

17

95.     The Seventh Circuit has held that a debt collection letter must state "the *total amount due* – interest and other charges as well as principal – on the date the dunning letter was sent." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

96.     The Seventh Circuit has held that a debt collector may not confuse or mislead a consumer into paying portions of the balance that are not yet due.  *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004).

97.     The Seventh Circuit has also held that a debt collector must state the name of the creditor in a non-confusing manner:

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers.  If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016).

98.     In *Janetos*, the Seventh Circuit concluded:

> [Section] 1692g(a)(2) requires a particular disclosure—the name of the current creditor—and defendants' letters simply fail to provide it, directly or indirectly.  The recipients of these letters would therefore find themselves obliged to guess who currently owned the debts in question.  Since the name was on the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided.  Compliance with the clear requirements of § 1692g(a)(2) demands more.

*Janetos*, 825 F.3d at 323.

99.     There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a).  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

18

## The WCA

100.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

101.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

102.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

103.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

104.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

105.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

106. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

107. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

108. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

109. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

110. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

111. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

112. Count I is brought against Defendant DeVille.

113. Exhibits A and B contain false, deceptive, misleading, confusing, and contradictory statements as to the identity of the current creditor.

20

114. The unsophisticated consumer would be confused and misled as to the identity of the creditor and would feel intimidated into paying the debt.

115. Defendant's misstatement of the name of the creditor is a false representation or deceptive means to collect or attempt to collect the alleged debt.

116. Defendant's misstatement of the name of the creditor is a false and misleading statement of the character and legal status of the alleged debt.

117. Defendant's misstatement of the name of the creditor is an unfair and unconscionable means of collecting or attempting to collect the alleged debt.

118. The misstatement is material, in that the unsophisticated consumer would not be able to determine who actually holds the debt from reading Exhibits A and B and may mistakenly make a payment to the wrong entity.

119. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(2).

## COUNT II – FDCPA

120. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

121. Count II is brought against both Defendants.

122. Exhibits A, B, and C contain contradictory and confusing statements about the status of the account, and the amount of the debt.

123. Exhibits A and B, mailed by DeVille on or about January 16, 2018, state that the accounts have been accelerated, and that interest has accrued.

124. Exhibit C, mailed by UNISA on or about February 13, 2018 --- almost a month after DeVille mailed Exhibits A and B --- states that the accounts have not been accelerated, and that interest has not accrued.

21

125.    Exhibit C falsely states for both loans that "YOUR ACCOUNT IS CURRENT" when neither loan actually was current.

126.    The contradictory representations in Exhibits A and B and Exhibit C are *per se* confusing and false, deceptive, and misleading.

127.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(1).

## COUNT III – WCA

128.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

129.    Count III is brought against both Defendants.

130.    Exhibits A, B, and C contain false, deceptive, misleading, confusing, and contradictory statements as to the identity of the current creditor, and the amount and status of the debts.

131.    The unsophisticated consumer would be confused and misled as to the identity of the creditor, the amount of the debts and whether the debts were current or in default, and would feel intimidated into paying the debt.

132.    Defendants' misstatements of the identity of the creditor, the amount of the debts and whether the debts were current or in default, are material false representations to collect or attempt to collect the alleged debt.

133.    Defendants' misstatements of the identity of the creditor, the amount of the debts and whether the debts were current or in default, are material false and misleading statements of the amount, character, and legal status of the alleged debt.

134.     Defendants' misrepresentations as to the identity of the creditor, the amount of the debts and whether the debts were current or in default, are unfair and unconscionable means of collecting or attempting to collect the alleged debt.

135.     The misstatements are material, in that the unsophisticated consumer would not be able to determine the amount and status of the debt from reading Exhibits A-C.  As a result, the consumer would feel intimidated and harassed, and may mistakenly make a payment to the wrong entity or in the wrong amount.

136.     Defendants violated Wis. Stat.  §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

137.     Plaintiff brings this action on behalf of four Classes.

138.     Class I ("Wisconsin Name of Creditor Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by DeVille in the form represented by Exhibits A and/or B to the complaint in this action (c) attempting to collect a debt incurred for personal, family, or household purposes, (d) where the letter states that the account has been "assigned to DeVille" but does not otherwise identify the current creditor, (e) and was mailed between February 20, 2017 through April 24, 2018, inclusive, (f) and was not returned by the postal service.

139.     Class II ("Nationwide Name of Creditor Class") consists of (a) all natural persons in the United States of America, (b) who were sent a collection letter by DeVille in the form represented by Exhibits A and/or B to the complaint in this action (c) attempting to collect a debt incurred for personal, family, or household purposes, (d) where the letter states that the account has been "assigned to DeVille" but does not otherwise identify the current creditor, (e) and was

mailed between February 20, 2017 through April 24, 2018, inclusive, (f) and was not returned by the postal service.

140.    Class III ("Wisconsin Amount of Debt Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by DeVille in the form represented by Exhibits A and/or B to the complaint in this action stating that the debt had accrued interest (c) and then subsequently sent a collection letter or account statement by UNISA in form of Exhibit C representing the amount of the debt as being entirely due to principal and not including any accrued interest (d) attempting to collect a debt incurred for personal, family, or household purposes, (e) where the collection letter or account statement in the form of Exhibit C was mailed between April 24, 2017 through April 24, 2018, inclusive, (f) and neither the letter in the form of Exhibit A or B nor the collection letter or account statement in the form of Exhibit C was returned by the postal service.

141.    Class IV ("Nationwide Amount of Debt Class") consists of (a) all natural persons in the United States of America, (b) who were sent a collection letter by DeVille in the form represented by Exhibits A and/or B to the complaint in this action stating that the debt had accrued interest (c) and then subsequently sent a collection letter or account statement by UNISA in form of Exhibit C representing the amount of the debt as being entirely due to principal and not including any accrued interest (d) attempting to collect a debt incurred for personal, family, or household purposes, (e) where the collection letter or account statement in the form of Exhibit C was mailed between April 24, 2017 through April 24, 2018, inclusive, (f) and neither the letter in the form of Exhibit A or B nor the collection letter or account statement in the form of Exhibit C was returned by the postal service.

142.     Each Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each Class.

143.     There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A, B, and/or C violate the FDCPA and/or the WCA.

144.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

145.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

146.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

147.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  July 13, 2018

**ADEMI & O'REILLY, LLP**

By:    /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000 | (414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com